1 │ TRACY L. WILKISON
  │ Attorney for the United States,
2 │ Acting Under Authority
  │ Conferred by 28 U.S.C. § 515
3 │ BRANDON FOX
  │ Assistant United States Attorney
4 │ Chief, Criminal Division
  │ JOSEPH T. MCNALLY (Cal. Bar No. 250289)
5 │ ASHWIN JANAKIRAM (Cal. Bar No. 277513)
  │ SCOTT D. TENLEY (Cal. Bar No. 298911)
6 │      United States Courthouse
  │      312 North Spring Street
7 │      Los Angeles, California 90012
  │      Telephone: 213-894-2272
8 │      Facsimile: 213-894-2275
  │      E-mail:    joseph.mcnally@usdoj.gov
9 │
  │ Attorneys for Plaintiff
10 │ UNITED STATES OF AMERICA

FILED
2019 JUL 23 PM 3:34
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY___

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 │ UNITED STATES OF AMERICA,        SACR19-00132 JLS

14 │          Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                     MICHAEL D. DROBOT
15 │             v.

16 │ MICHAEL D. DROBOT,

17 │          Defendant.

18

19 │      1.    This constitutes the plea agreement between MICHAEL D.

20 │ DROBOT ("defendant") and the United States Attorney's Office for the

21 │ Central District of California ("the USAO") in the above-captioned

22 │ case.  This agreement is limited to the USAO and cannot bind any

23 │ other federal, state, local, or foreign prosecuting, enforcement,

24 │ administrative, or regulatory authorities.

25                      DEFENDANT'S OBLIGATIONS

26 │      2.    Defendant agrees to:

27 │           a.    Give up the right to indictment by a grand jury and,

28 │ at the earliest opportunity requested by the USAO and provided by the

1   Court, appear and plead guilty to a three-count information in the

2   form attached to this agreement as Exhibit A or a substantially

3   similar form, which charges defendant with wire fraud, in violation

4   of 18 U.S.C. § 1343; money laundering, in violation of 18 U.S.C.

5   § 1957; and criminal contempt, in violation of 18 U.S.C. § 401.

6         b.   Not contest facts agreed to in this agreement.

7         c.   Abide by all agreements regarding sentencing contained

8   in this agreement.

9         d.   Appear for all court appearances, surrender as ordered

10   for service of sentence, obey all conditions of any bond, and obey

11   any other ongoing court order in this matter.

12         e.   Not commit any crime; however, offenses that would be

13   excluded for sentencing purposes under United States Sentencing

14   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

15   within the scope of this agreement.

16         f.   Be truthful at all times with the United States

17   Probation and Pretrial Services Office, and the Court.

18         g.   Pay the applicable special assessments at or before

19   the time of sentencing unless defendant lacks the ability to pay and

20   prior to sentencing submits a completed financial statement on a form

21   to be provided by the USAO.

22         h.   Waive and give up any right to appeal, including

23   moving to dismiss with prejudice any pending appeal, and the right to

24   bring any collateral attack, in connection with the Court's finding

25   that defendant breached his plea agreement in United States v.

26   Drobot, Case No. SA CR 14-34-JLS (the "Underlying Criminal Case"),

27   docket no. 266 ("the Underlying 2014 Plea Agreement").

28

1          i.    Not contest and waive and give up any right to appeal

2    or collaterally attack, the forfeiture of defendant's residence and

3    warehouse set forth in the government's substitute asset motion filed

4    in United States v. Drobot, No. SA CR 14-34-JLS, docket no. 281.

5          j.    In the event that proceeds from the sale of

6    defendant's home and warehouse do not satisfy the outstanding balance

7    of the money judgment ordered in the Underlying Criminal Case, pay

8    any remaining balance on the money judgement order prior to

9    sentencing.

10        3.    Defendant further agrees to cooperate fully with the USAO,

11   the FBI, USPS-OIG, IRS-CI, California Department of Insurance and, as

12   directed by the USAO, any other federal, state, local, or foreign

13   prosecuting, enforcement, administrative, or regulatory authority.

14   This cooperation requires defendant to:

15        a.    Respond truthfully and completely to all questions

16   that may be put to defendant, whether in interviews, before a grand

17   jury, or at any trial or other court proceeding.

18        b.    Attend all meetings, grand jury sessions, trials or

19   other proceedings at which defendant's presence is requested by the

20   USAO or compelled by subpoena or court order.

21        c.    Produce voluntarily all documents, records, or other

22   tangible evidence relating to matters about which the USAO, or its

23   designee, inquires.

24        4.    For purposes of this agreement: (1) "New Cooperation

25   Information" shall mean any statements made, or documents, records,

26   tangible evidence, or other information provided, by defendant

27   pursuant to defendant's cooperation under this agreement; (2)

28   "Underlying Cooperation Information" shall mean any statements,

1  documents, records, or other information provided by anyone pursuant
2  to the Underlying 2014 Plea Agreement; and (3) "Plea Information"
3  shall mean any statements made by defendant, under oath, at the
4  forthcoming guilty plea hearing and the agreed to factual basis
5  statement in this agreement.  Defendant understands that because he
6  breached the Underlying 2014 Plea Agreement, the government may use
7  the statements defendant made at the guilty plea in the Underlying
8  Criminal Case and in the factual basis in the Underlying 2014 Plea
9  Agreement without limitation in any proceeding.  Defendant
10 understands that because he breached the Underlying 2014 Plea
11 Agreement, the government may also use other Underlying Cooperation
12 Information, including statements that he made as part of cooperation
13 pursuant to the Underlying 2014 Plea Agreement, without limitation in
14 any proceeding.

THE USAO'S OBLIGATIONS

15
16      5.    The USAO agrees to:
17            a.    Not contest facts agreed to in this agreement.
18            b.    Abide by all agreements regarding sentencing contained
19 in this agreement.
20            c.    At the time of sentencing, provided that defendant
21 demonstrates an acceptance of responsibility for the offenses up to
22 and including the time of sentencing, recommend a two-level reduction
23 in the applicable Sentencing Guidelines offense level, pursuant to
24 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
25 additional one-level reduction if available under that section.
26      6.    The USAO further agrees:
27            a.    Not to offer as evidence in its case-in-chief in the
28 above-captioned case or any other criminal prosecution that may be

4

brought against defendant by the USAO, or in connection with any
sentencing proceeding in any criminal case that may be brought
against defendant by the USAO, any New Cooperation Information.
Defendant agrees, however, that the USAO may use both New Cooperation
Information and Plea Information: (1) to obtain and pursue leads to
other evidence, which evidence may be used for any purpose, including
any criminal prosecution of defendant; (2) to cross-examine defendant
should defendant testify, or to rebut any evidence offered, or
argument or representation made, by defendant, defendant's counsel,
or a witness called by defendant in any trial, sentencing hearing, or
other court proceeding; and (3) in any criminal prosecution of
defendant for false statement, obstruction of justice, or perjury.

        b.   Not to use New Cooperation Information against
defendant at sentencing for the purpose of determining the applicable
guideline range, including the appropriateness of an upward
departure, or the sentence to be imposed, and to recommend to the
Court that the New Cooperation Information not be used in determining
the applicable guideline range or the sentence to be imposed.
Defendant understands, however, that New Cooperation Information will
be disclosed to the United States Probation and Pretrial Services
Office and the Court, and that the Court may use New Cooperation
Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for
determining the sentence to be imposed.

        c.   In connection with defendant's sentencing, to bring to
the Court's attention the nature and extent of defendant's
cooperation that occurred after the date this agreement was executed.

        d.   If the USAO determines, in its exclusive judgment,
that defendant has both complied with defendant's obligations under

1  paragraphs 2 and 3 above and provided substantial assistance to law
2  enforcement in the prosecution or investigation of another
3  ("substantial assistance"), to move the Court pursuant to U.S.S.G.
4  § 5K1.1 to fix an offense level and corresponding guideline range
5  below that otherwise dictated by the Sentencing Guidelines, and to
6  recommend a term of imprisonment within this reduced range.

7          e.   Except for criminal tax violations (including
8  conspiracy to commit such violations chargeable under 18 U.S.C.
9  § 371), not further criminally prosecute defendant for crimes arising
10  out of defendant's conduct described in the agreed-to factual basis
11  set forth in paragraph 19 below.  Defendant understands that the USAO
12  is free to criminally prosecute defendant for any other unlawful past
13  conduct or any unlawful conduct that occurs after the date of this
14  agreement.  Defendant agrees that at the time of sentencing the Court
15  may consider the uncharged conduct in determining the applicable
16  Sentencing Guidelines range, the propriety and extent of any
17  departure from that range, and the sentence to be imposed after
18  consideration of the Sentencing Guidelines and all other relevant
19  factors under 18 U.S.C. § 3553(a).

20          DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

21      7.   Defendant understands the following:

22          a.   Any knowingly false or misleading statement by
23  defendant will subject defendant to prosecution for false statement,
24  obstruction of justice, and perjury and will constitute a breach by
25  defendant of this agreement.

26          b.   Nothing in this agreement requires the USAO or any
27  other prosecuting, enforcement, administrative, or regulatory

28

1  authority to accept any cooperation or assistance that defendant may

2  offer, or to use it in any particular way.

3       c.   Defendant cannot withdraw defendant's guilty pleas if

4  the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

5  reduced guideline range or if the USAO makes such a motion and the

6  Court does not grant it or if the Court grants such a USAO motion but

7  elects to sentence above the reduced range.

8       d.   At this time the USAO makes no agreement or

9  representation as to whether any cooperation that defendant has

10  provided or intends to provide constitutes or will constitute

11  substantial assistance, other than the understanding set forth in

12  subsection (f) below, which precludes defendant from receiving any

13  benefit from Underlying Cooperation Information.  The decision

14  whether defendant has provided substantial assistance will rest

15  solely within the exclusive judgment of the USAO.

16       e.   The USAO's determination whether defendant has

17  provided substantial assistance will not depend in any way on whether

18  the government prevails at any trial or court hearing in which

19  defendant testifies or in which the government otherwise presents

20  information resulting from defendant's cooperation.

21       f.   Defendant understands that, by breaching the

22  Underlying 2014 Plea Agreement, defendant is not entitled to, and the

23  government will not move for, any further reduction to the sentence

24  imposed in the Underlying Criminal Case, including based on Federal

25  Rule of Criminal Procedure 35.  Any substantial assistance provided

26  by defendant after entering into this plea agreement will be

27  considered only in connection with sentencing for the offenses to

28  which defendant is pleading guilty pursuant to this plea agreement.

<u>NATURE OF THE OFFENSES</u>

8.    Defendant understands that for defendant to be guilty of count one, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) the defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and (4) the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

9.    Defendant understands that for defendant to be guilty of count two, that is, money laundering in violation of Title 18, United States Code, Section 1957, the following must be true: (1) the defendant knowingly engaged or attempted to engage in a monetary transaction; (2) the defendant knew the transaction involved criminally derived property; (3) the property had a value greater than $10,000; (4) the property was, in fact, derived from wire fraud; and (5) the transaction occurred in the United States.  The term "monetary transaction" includes a deposit, withdrawal, or transfer, in or affecting interstate commerce, of funds or a monetary instrument, by, through, or to, a financial institution.

10.    Defendant understands that for defendant to be guilty of count three, that is, criminal contempt in violation of Title 18,

United States Code, Section 401(3), the following must be true: (1) there was a clear and definite order of a court of the United States; (2) the defendant knew of the order; and (3) the defendant willfully disobeyed the order.  Willfulness is defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.  It implies a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order.

<u>PENALTIES AND RESTITUTION</u>

11.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, as charged in count one of the information, is: twenty-years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1957, as charged in count two of the information, is: ten-years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13.  Defendant understands that under <u>United States v. Broussard</u>, 611 F.3d 1069, 1072-73 (9th Cir. 2010), the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 401(3), as charged in count three of the information, is the statutory maximum sentence for the most

1   nearly analogous offense.  The parties agree that the most nearly

2   analogous offense is wire fraud.  The statutory maximum for count

3   three is therefore twenty-years imprisonment; a three-year period of

4   supervised release; a fine of $250,000 or twice the gross gain or

5   gross loss resulting from the offense, whichever is greatest; and a

6   mandatory special assessment of $100.

7       14.  Defendant understands, therefore, that the total maximum

8   sentence for all offenses to which defendant is pleading guilty is:

9   50 years' imprisonment; a 3-year period of supervised release; a fine

10  of $750,000 or twice the gross gain or gross loss resulting from the

11  offenses, whichever is greatest; and a mandatory special assessment

12  of $300.

13      15.  Defendant understands that defendant will be required to

14  pay full restitution to the victim of the offenses to which defendant

15  is pleading guilty.  Defendant agrees that, in return for the USAO's

16  compliance with its obligations under this agreement, the Court may

17  order restitution to persons other than the victim of the offenses to

18  which defendant is pleading guilty and in amounts greater than those

19  alleged in the counts to which defendant is pleading guilty.  In

20  particular, defendant agrees that the Court may order restitution to

21  any victim of any of the following for any losses suffered by that

22  victim as a result: (a) any relevant conduct, as defined in U.S.S.G.

23  § 1B1.3, in connection with the offenses to which defendant is

24  pleading guilty; and (b) any charges not prosecuted pursuant to this

25  agreement as well as all relevant conduct, as defined in U.S.S.G.

26  § 1B1.3, in connection with those charges.

27      16.  Defendant understands that supervised release is a period

28  of time following imprisonment during which defendant will be subject

10

to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

17.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

18.  Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected

11

1  immigration consequences will not serve as grounds to withdraw

2  defendant's guilty pleas.

FACTUAL BASIS

4      19.  Defendant admits that defendant is, in fact, guilty of the

5  offenses to which defendant is agreeing to plead guilty.  Defendant

6  and the USAO agree to the statement of facts provided below and agree

7  that this statement of facts is sufficient to support a plea of

8  guilty to the charge described in this agreement and to establish the

9  Sentencing Guidelines factors set forth in paragraph 21 below, but is

10  not meant to be a complete recitation of all facts relevant to the

11  underlying criminal conduct or all facts known to either party that

12  relate to that conduct.

13      **A.    The Criminal Forfeiture Order**

14      As described in the Underlying 2014 Plea Agreement, defendant

15  orchestrated a kickback scheme where he paid more than $50 million in

16  kickbacks to medical professionals in order to steer spinal surgeries

17  and other surgeries and medical procedures to Pacific Hospital of

18  Long Beach, in Long Beach, California.  Defendant's profits from the

19  scheme amounted to tens of millions of dollars.  On January 10, 2018,

20  the district court ordered defendant to forfeit $10 million to the

21  United States and to partially satisfy the forfeiture by selling

22  defendant's 1965 Aston Martin ("the Aston Martin"), 1958 Porsche

23  ("the Porsche"), and 1971 Mercedes Benz ("the Mercedes")(the "Subject

24  Vehicles"), and remitting the sale proceeds to the United States

25  ("Criminal Forfeiture Order").  The Criminal Forfeiture Order

26  provided that defendant was to perform this obligation by a date

27  agreed to with the United States, which was July 5, 2018.  Defendant

28  fully understood the terms of the Court's January 10, 2018 Order.

12

**B.   Defendant Fraudulently Transferred Car Sales Proceeds**

Beginning in or around June 22, 2018, and continuing through at least September 14, 2018, defendant devised and executed a scheme to defraud the United States out of the car sales proceeds to which the United States was entitled under the Criminal Forfeiture Order. Defendant intentionally violated the Criminal Forfeiture Order in an effort to keep criminal proceeds for himself.  Specifically, on or about June 22, 2018, defendant conveyed an interest in the Aston Martin to RM Sotheby's ("RMS"), a classic car auction company, in exchange for a $1,000,000 advance on the proceeds from the sale of the Aston Martin.  Rather than providing these proceeds to the United States as required by the Criminal Forfeiture Order, defendant directed that the money be transferred to his Mickey Motors account ending in 4936 at Wells Fargo Bank ("defendant's Wells Fargo account").  In furtherance of defendant's efforts to defraud the United States, on or about June 29, 2018, defendant caused RMS to transfer $1,000,000 from a Comerica Bank account ending in 6292, in Michigan, to defendant's Wells Fargo account, in California, via interstate wire.  Defendant then used the money for personal purposes.  At the time defendant used the money for personal purposes, he knew he had no way to repay the advance within the time frame imposed to satisfy the Criminal Forfeiture Order, and further understood that his conduct was in direct violation of the Criminal Forfeiture Order.

In an effort to conceal his fraudulent conduct and violation of the Criminal Forfeiture Order, on June 23, 2018, defendant directed his attorneys to request, on defendant's behalf, that the United States agree to extend the date by which he had to perform his

obligations under the Criminal Forfeiture Order, through the end of August 2018, so that he could sell the cars at a Pebble Beach car auction being held on August 24 and August 25, 2018, where he would purportedly obtain maximum value for the cars. Defendant did not disclose that he had already violated the Criminal Forfeiture Order when he conveyed an interest in the Aston Martin to RMS in exchange for $1,000,000, and then used the money for personal purposes. Without knowledge of these facts, the United States agreed to defendant's requested extension, and, on August 14, 2018, provided to defendant wiring instructions for the United States' account where RMS was to send the car sales proceeds. Defendant's counsel, acting at defendant's direction, represented to the United States that he would instruct RMS to wire the car sales proceeds to the government.

On August 25, 2018, RMS, acting at defendant's direction, sold the Porsche for $434,065, and, on September 7, 2018, sold the Aston Martin for $1,500,000. On September 12, 2018, defendant sent an email to RMS directing that RMS wire his share of the sales proceeds to defendant's Wells Fargo account rather than to the government, as he had promised and was required to do under the Criminal Forfeiture Order. In furtherance of defendant's efforts to defraud the United States, on or about September 14, 2018, defendant caused RMS to transfer $675,795.89 from a Comerica Bank account in Michigan to defendant's Wells Fargo account in California via interstate wire. Defendant then used the money for personal purposes. At the time he engaged in these transactions, defendant understood that he was violating the Criminal Forfeiture Order.

14

1        **C.    Money Laundering**

2        On June 28, 2018, defendant's Wells Fargo account had an ending

3  balance of $41,463.44.   On June 29, 2018, defendant received into his

4  account $1,000,000 that was the proceeds of the wire fraud scheme.

5  On July 2, 2018, defendant knowingly used over $10,000 of the

6  criminal proceeds from the wire fraud scheme in a financial

7  transaction, namely, defendant's transfer of $840,000 to R.R.   On

8  September 13, 2018, defendant's Wells Fargo account had an ending

9  balance of $6,932.81.   On September 14, 2018, defendant received into

10  his account $675,795.89 that was proceeds of the wire fraud scheme.

11  On or about September 17, 2018, defendant knowingly used over $10,000

12  of the criminal proceeds of the wire fraud scheme in a financial

13  transaction, namely, he wired $350,000 to K.T.   Defendant also

14  permitted K.T. to conduct an intra-bank transfer of $225,000 in wire

15  fraud proceeds from defendant's Wells Fargo account to K.T.'s

16  account.

17                          SENTENCING FACTORS

18        20.   Defendant understands that in determining defendant's

19  sentence the Court is required to calculate the applicable Sentencing

20  Guidelines range and to consider that range, possible departures

21  under the Sentencing Guidelines, and the other sentencing factors set

22  forth in 18 U.S.C. § 3553(a).   Defendant understands that the

23  Sentencing Guidelines are advisory only, that defendant cannot have

24  any expectation of receiving a sentence within the calculated

25  Sentencing Guidelines range, and that after considering the

26  Sentencing Guidelines and the other § 3553(a) factors, the Court will

27  be free to exercise its discretion to impose any sentence it finds

28

1    appropriate up to the maximum set by statute for the crimes of
2    conviction.

3         21.   Defendant and the USAO agree to the following applicable
4    Sentencing Guidelines factors:

5    Count One

| | | |
|---|---|---|
| 6  Base Offense Level: | 7  | USSG § 2B1.1(a)(1) |
| 7  Loss: | 16 | USSG § 2B1.1(b)(1)(I) |
| 8  Violate Court Order: | 2  | USSG § 2B1.1(b)(9)(C) |

9    Count Two

| | | |
|---|---|---|
| 10  Base Offense Level: | 25 | USSG § 2S1.1(a)(1) |
| 11  1957 Conviction: | 1  | USSG § 2S1.1(b)(2)(A) |

12   Count Three

| | | |
|---|---|---|
| 13  Base Offense Level: | 7  | USSG §§ 2J1.1, 2X5.1, |
| 14  | | 2B1.1(a)(1) |
| 15  Loss: | 16 | USSG § 2B1.1(b)(1)(I) |
| 16  Violate Court Order: | 2  | USSG § 2B1.1(b)(9)(C) |
| 17  Combined Offense Level: | 26 | USSG §§ 3D1.1, 3D1.3(a) |

18   Defendant and the USAO reserve the right to argue that additional
19   specific offense characteristics, adjustments, and departures under
20   the Sentencing Guidelines are appropriate.

21        22.   Defendant understands that there is no agreement as to
22   defendant's criminal history or criminal history category.

23        23.   Defendant and the USAO reserve the right to argue for a
24   sentence outside the sentencing range established by the Sentencing
25   Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
26   (a)(2), (a)(3), (a)(6), and (a)(7).  Defendant further understands
27   that the government may recommend that defendant's sentence run
28   consecutive to the sentence imposed in the Underlying Criminal Case

16

1    and the Court has discretion whether to run the sentence
2    consecutively or concurrently.

3                    WAIVER OF CONSTITUTIONAL RIGHTS

4         24.   Defendant understands that by pleading guilty, defendant
5    gives up the following rights:

6              a.   The right to persist in a plea of not guilty.

7              b.   The right to a speedy and public trial by jury.

8              c.   The right to be represented by counsel -- and if
9    necessary have the Court appoint counsel -- at trial.   Defendant
10   understands, however, that, defendant retains the right to be
11   represented by counsel -- and if necessary have the Court appoint
12   counsel -- at every other stage of the proceeding.

13             d.   The right to be presumed innocent and to have the
14   burden of proof placed on the government to prove defendant guilty
15   beyond a reasonable doubt.

16             e.   The right to confront and cross-examine witnesses
17   against defendant.

18             f.   The right to testify and to present evidence in
19   opposition to the charges, including the right to compel the
20   attendance of witnesses to testify.

21             g.   The right not to be compelled to testify, and, if
22   defendant chose not to testify or present evidence, to have that
23   choice not be used against defendant.

24             h.   Any and all rights to pursue any affirmative defenses,
25   Fourth Amendment or Fifth Amendment claims, and other pretrial
26   motions that have been filed or could be filed.

27
28

## WAIVER OF APPEAL OF CONVICTION

25.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

26.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

27.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than the Guidelines range for an offense level of 23 and the criminal history category determined by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used

18

to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

28. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within the Sentencing Guidelines range for an offense level of 23 or above and the criminal history determined by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

29. Defendant agrees that if, after entering his guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then: (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of New Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any New Cooperation

1  Information and any evidence derived from any New Cooperation
2  Information shall be admissible against defendant, and defendant will
3  not assert, and hereby waives and gives up, any claim under the
4  United States Constitution, any statute, or any federal rule, that
5  any New Cooperation Information or any evidence derived from any New
6  Cooperation Information should be suppressed or is inadmissible; and
7  (c) should the USAO choose to pursue any charge that was not filed as
8  a result of this agreement or the Underlying 2014 Plea Agreement,
9  then: (i) any applicable statute of limitations will be tolled
10 between February 20, 2014 (i.e., the date of defendant's signing of
11 the Underlying 2014 Plea Agreement) and the filing commencing any
12 such action; and (ii) defendant waives and gives up all defenses
13 based on the statute of limitations, any claim of pre-indictment
14 delay, or any speedy trial claim with respect to any such action,
15 except to the extent that such defenses existed as of the date of
16 defendant's signing this agreement.

17                  RESULT OF VACATUR, REVERSAL OR SET-ASIDE

18        30.  Defendant agrees that if any count of conviction is
19 vacated, reversed, or set aside, the USAO may: (a) ask the Court to
20 resentence defendant on any remaining counts of conviction, with both
21 the USAO and defendant being released from any stipulations regarding
22 sentencing contained in this agreement, (b) ask the Court to void the
23 entire plea agreement and vacate defendant's guilty pleas on any
24 remaining counts of conviction, with both the USAO and defendant
25 being released from all their obligations under this agreement, or
26 (c) leave defendant's remaining convictions, sentence, and plea
27 agreement intact.  Defendant agrees that the choice among these three
28 options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

31.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

32.   Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to

21

1  criminally prosecute defendant for any crime, including charges that

2  the USAO would otherwise have been obligated not to criminally

3  prosecute pursuant to this agreement or pursuant to the Underlying

4  2014 Plea Agreement; and (iii) will no longer be bound by any

5  agreement regarding the use of New Cooperation Information and will

6  be free to use any New Cooperation Information in any way in any

7  investigation, criminal prosecution, or civil, administrative, or

8  regulatory action.

9       c.   The USAO will be free to criminally prosecute

10 defendant for false statement, obstruction of justice, and perjury

11 based on any knowingly false or misleading statement by defendant.

12      d.   In any investigation, criminal prosecution, or civil,

13 administrative, or regulatory action: (i) defendant will not assert,

14 and hereby waives and gives up, any claim that any New Cooperation

15 Information was obtained in violation of the Fifth Amendment

16 privilege against compelled self-incrimination; and (ii) defendant

17 agrees that any New Cooperation Information, and any Plea

18 Information, as well as any evidence derived from any New Cooperation

19 Information, or any Plea Information, shall be admissible against

20 defendant, and defendant will not assert, and hereby waives and gives

21 up, any claim under the United States Constitution, any statute, Rule

22 401 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules

23 of Criminal Procedure, or any other federal rule, that any New

24 Cooperation Information, Plea Information, or any evidence derived

25 from any New Cooperation Information, or any Plea Information should

26 be suppressed or is inadmissible.

27     33.  Following the Court's finding of a knowing breach of this

28 agreement by defendant, should the USAO choose to pursue any charge

1  that was not filed as a result of this agreement or the Underlying

2  2014 Plea Agreement, then:

3        a.   Defendant agrees that any applicable statute of

4  limitations is tolled between February 20, 2014 (_i.e._, the date of

5  defendant's signing of the Underlying 2014 Plea Agreement) and the

6  filing commencing any such action.

7        b.   Defendant waives and gives up all defenses based on

8  the statute of limitations, any claim of pre-indictment delay, or any

9  speedy trial claim with respect to any such action, except to the

10  extent that such defenses existed as of February 20, 2014 (_i.e._, the

11  date of defendant's signing of the Underlying 2014 Plea Agreement).

12  COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

13  OFFICE NOT PARTIES

14     34.  Defendant understands that the Court and the United States

15  Probation and Pretrial Services Office are not parties to this

16  agreement and need not accept any of the USAO's sentencing

17  recommendations or the parties' agreements to facts or sentencing

18  factors.

19     35.  Defendant understands that both defendant and the USAO are

20  free to: (a) supplement the facts by supplying relevant information

21  to the United States Probation and Pretrial Services Office and the

22  Court; (b) correct any and all factual misstatements relating to the

23  Court's Sentencing Guidelines calculations and determination of

24  sentence; and (c) argue on appeal and collateral review, subject to

25  the waivers in this agreement, that the Court's Sentencing Guidelines

26  calculations and the sentence it chooses to impose are not error,

27  although each party agrees to maintain its view that the calculations

28  in paragraph 21 are consistent with the facts of this case.  While

23

this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

36. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all of defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

37. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

38. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

1    AGREED AND ACCEPTED

2    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
3    CALIFORNIA

4    TRACY L. WILKISON
     Attorney for the United States,
5    Acting Under Authority
     Conferred by 28 U.S.C. § 515

6

7                                                    07 01 2019

8    JOSEPH T. MCNALLY                       Date
     Assistant United States Attorney

9

10

11

12   MICHAEL D. DROBOT                       6/23/19
     Defendant                               Date

13

14

15   MAURICE SERCARZ                         6/28/19
     Attorney for Defendant MICHAEL D.       Date
16   DROBOT

17

18

19

20

21

22

23

24

25

26

27

28

                              25

1                  <u>CERTIFICATION OF DEFENDANT</u>

2     I have read this agreement in its entirety.  I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorney.  I understand

5 the terms of this agreement, and I voluntarily agree to those terms.

6 I have discussed the evidence with my attorney, and my attorney has

7 advised me of my rights, of possible pretrial motions that might be

8 filed, of possible defenses that might be asserted either prior to or

9 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10 of relevant Sentencing Guidelines provisions, and of the consequences

11 of entering into this agreement.  No promises, inducements, or

12 representations of any kind have been made to me other than those

13 contained in this agreement.  No one has threatened or forced me in

14 any way to enter into this agreement.  I am satisfied with the

15 representation of my attorney in this matter, and I am pleading

16 guilty because I am guilty of the charges and wish to take advantage

17 of the promises set forth in this agreement, and not for any other

18 reason.

19

20

21 _____    6/23/19

MICHAEL D. DROBOT           DATE

22 Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MICHAEL D. DROBOT's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.


MAURICE SERCARZ                          Date
Attorney for Defendant Michael D.
Drobot